**In re Terrance and Sharon HARRIGAN, Debtors,**

**PALATINE NATIONAL BANK, Plaintiff,**

v.

**Terrance and Sharon HARRIGAN, Defendants.**

**Nos. 86 C 6753, 86 C 6754, 83 B 5663 and 83 B 6025.**

United States District Court, N.D. Illinois, E.D.

May 1, 1987.

---

George L. Bruckert, Jr., Chicago, Ill., for plaintiff.

James Sprayregen, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

GRADY, Chief Judge.

This case is before us on the appeal of the Palatine National Bank (the "Bank") from the ruling of the bankruptcy court ordering it to turn over $15,000 to appellees Terrance and Sharon Harrigan (the "debtors") from the proceeds of the Bank's foreclosure sale of the beneficial interest in the land trust which held title to the debtors' real property. The bankruptcy court ruled that the debtors were entitled to $15,000 as the amount of the homestead exemption provided by Illinois law. For the reasons stated below, we vacate that decision and remand the case for additional proceedings.

The various factual findings and procedural rulings in this case by the bankruptcy court present us with a number of issues on appeal. The three major questions that confront us are:

(1) Did the Bank timely and properly appeal the bankruptcy court's April 11 memorandum decision and subsequent denial of the Bank's motion to reconsider?

(2) Did the Bank fail to object to the debtors' claim of homestead exemption in accordance with Bankruptcy Rule 4003(b)?

(3) If so, did the debtors waive their homestead rights in favor of the Bank as secured creditor, thereby giving the bank a lien under § 522(c) that cannot be avoided, rendering the debtors' exemption claim futile despite the Bank's failure to object?

**1.** Because Illinois has opted out of the federal exemptions provided in 11 U.S.C. § 522(d), the debtors could only assert those exemptions to

## FACTS AND PROCEDURAL BACKGROUND

The debtors entered into a land trust agreement with the Bank as trustee. The corpus of that trust was, initially, certain real estate not involved in this proceeding. On March 24, 1978, the debtors assigned their beneficial interest in the land trust to the Bank as security for a business loan. This assignment gave the Bank "all rights, power including the power of direction, privileges and beneficial interest in and to that certain trust agreement...." Record on Appeal ("Record"), Document 24 (Assignment of Interest).

On August 8, 1978, the debtors conveyed their residence at 8816 Moody Street, Morton Grove, Illinois, into the land trust by warranty deed. This deed stated that the real estate was conveyed to the Bank "as Trustee under the provisions of a trust agreement dated the 24th day of March 1978." The deed also states that "the said grantors hereby expressly waive and release any and all right or benefit under and by virtue of any and all statutes of the State of Illinois, providing for the exemption of homestead from sale on execution or otherwise." Record, Document 24 (Warranty Deed).

On December 12, 1982, the Bank obtained a judgment for $377,561.00 against the debtors in the Circuit Court of Cook County in a case styled *Palatine National Bank v. Harrigan*, No. 82 L 5142. In May 1983, the debtors filed separate petitions for relief under Chapter 11 of the Bankruptcy Code. Each claimed a $7,500 exemption in the beneficial interest in the land trust as homestead rights not subject to the claims of creditors under Ill.Rev. Stat. ch. 110, ¶ 12–901 (1985).[1]

At no time did the Bank raise a formal objection to the claimed homestead exemptions under Bankruptcy Rule 4003(b). Rather, on November 19, 1984, the Bank filed a motion before Judge Hertz of the bankruptcy court to modify the automatic stay resulting from the filing of debtors'

which they might be entitled under Illinois law. 11 U.S.C. § 522(b); Ill.Rev.Stat. ch. 110, ¶ 12–1201.

Chapter 11 petitions under 11 U.S.C. § 362(a). The Bank sought to foreclose its beneficial interest in the land trust to satisfy its state court judgment against the debtors. The debtors contested the motion and a hearing was held. On February 8, 1985, Judge Hertz granted the Bank's motion and modified the stay to allow the Bank "leave to foreclose its collateral security in accordance with the laws of Illinois."

The Bank then resumed the proceedings in the state court under case number 82 L 5142. Judge Irwin Cohen of the Cook County Circuit Court entered an order on April 9, 1985, assigning any interest in the trust to the Bank and ordering the debtors' interest sold for satisfaction of the Bank's judgment, "subject to any exemptions for homestead." The Bank then moved on April 25, 1985, for a modification of that order, arguing that the debtors had waived their homestead rights by the August 1978 deed.

Notice of this motion was served personally on the debtors, but not on debtors' counsel, and the motion was not contested. Transcript of Hearing on Motion to Reconsider, July 16, 1986, at 17–18.[2] Judge Cohen modified the April 9 order, ruling that the debtors "as beneficiaries of [the Trust] waived all homestead exemption in and to the property comprising the corpus of said trust. It is therefore ordered that the order of April 9, 1985 is hereby modified to strike therefrom that part making a sale of the beneficial interest subject to the homestead rights of the debtor." Record, Document 24 (April 25 Order).

On June 5, 1985, the beneficial interest in the land trust was sold by the Cook County Sheriff for $22,600 and the Circuit Court of Cook County completed its involvement in the case by entering judgment approving that sale on June 12, 1985. Answer to Motion to Compel Turnover of Funds, Exhibit C.

Meanwhile, in the bankruptcy court, the debtors' Chapter 11 cases had been converted to Chapter 7 cases on May 8, 1985. The meeting of creditors in the Chapter 7 proceeding, held pursuant to 11 U.S.C. § 341, was adjourned *sine die* on July 11, 1985. On September 12, 1985, the debtors filed a motion to compel the turnover of funds received by the Bank from the sale of the beneficial interest in the land trust. The debtors claimed that they were entitled to $15,000 in homestead exemptions because they had claimed the exemptions in their Chapter 11 schedules in May 1983 and the Bank did not object to the claims within 30 days after the conclusion of the creditors' meeting on July 11, as required by Bankruptcy Rule 4003(b). Therefore, argued the debtors, the exemptions were automatically allowed under 11 U.S.C. § 522(*l*) due to the lack of objection by the Bank. The Bank responded that the April 25, 1985 state court order ruling that the debtors had waived their homestead rights was res judicata and that objection under Rule 4003(b) was unnecessary because the Bank's security interest constituted a lien which debtors could not avoid by claiming exemptions under 11 U.S.C. § 522(c). Brief in Opposition to Debtor's Motion to Compel Turnover of Funds at 2–3.

On November 13, 1985, the Bank moved for summary dismissal of the debtors' motion to compel. This motion to dismiss was denied, and Judge Ginsberg, who had taken over the case from Judge Hertz, ruled that the Cook County Circuit Court had no jurisdiction to determine whether a waiver of homestead had occurred. November 11, 1985 Transcript at 6; November 27, 1985 Transcript at 4. At this point, the bankruptcy court had not been informed of the August 1978 deed from the debtors to the Bank, although the Bank had introduced evidence of the state court's June 12, 1985 order approving the sale. *Id.* at 12–13. The Bank asked the court to enter a written order setting forth its ruling.

On April 11, 1986, Judge Ginsberg issued a Memorandum and Order ("Memorandum") directing the Bank to turn over $15,-

---

**2.** The record on appeal contains transcripts of nine different hearings before Judge Ginsberg in the bankruptcy court. For ease of reference, we will refer to these documents generically as "Transcript" and identify the particular hearing by its date.

000 of the sale proceeds to the debtors. The court stated that the Bank had failed to file a timely objection to the debtors' exemption claims under Rule 4003(b); the Bank, in effect, had "sat on its rights" as far as contesting the validity of the exemption and § 522(*l*) protected the debtor in such a case by automatically allowing the exemption. Memorandum at 10–11. The court also rejected the Bank's res judicata argument, stating that the Bank had "produced no evidence whatsoever to this Court that the debtors in fact waived their homestead exemption in the manner required by Illinois law." *Id.* at 17.

On April 21, 1986, the Bank filed a motion to reconsider the April 11 Memorandum. The bankruptcy court denied that motion on the morning of May 27, 1986, but later that afternoon withdrew its denial by telephone notice and allowed the Bank to present more evidence. Finally, after one hearing and a continuance, the Bank presented the court with the August 1978 deed containing the homestead waiver. But the court again denied the motion to reconsider, ruling that the waiver did not meet the specificity requirements of Ill. Rev.Stat. ch. 110, ¶ 12–904. The court also found that the deed's waiver was to the bank as land trustee and not as secured creditor. July 16, 1986 Transcript at 29, 33. Finally, the court again rejected the Bank's assertion that the state court's finding of waiver was binding as res judicata; because the bank had failed to serve the debtors' attorney with notice of the April 25, 1985 motion before Judge Cohen, and no one appeared on the debtors' behalf, that "order [was] entered without due process, without proper service, and is not binding on this Court." *Id.* at 36.

The bank filed its notice of appeal to this court on July 28, 1986.

## DISCUSSION

Findings of a bankruptcy court shall not be set aside unless "clearly erroneous." Bankruptcy Rule 8013. However, where the issues on appeal are legal, the district court may review *de novo* and reach conclusions independently of the bankruptcy court's decision. *In re Ebbler Furniture and Appliances, Inc.*, 804 F.2d 87, 89 (7th Cir.1986); *In re Ellis*, 66 B.R. 821, 823 (N.D.Ill.1986) (Grady, J.). This appeal presents issues of both law and fact, and we will apply the appropriate "de novo" or "clearly erroneous" standard to each issue involved.

### Scope of the Bank's Appeal

The debtors argue that the Bank failed to timely appeal the bankruptcy court's April 11 Memorandum because its motion to "reconsider" that decision did not toll the ten-day period for appeal of bankruptcy court rulings under Bankruptcy Rule 8002(a). The debtors conclude that our review is therefore limited to determining whether Judge Ginsberg abused his discretion in denying that motion to reconsider. We disagree with this view of the appeal's procedural setting.

The Federal Rules of Civil Procedure do not specifically provide for "Motions to Reconsider"; the Bank's April 21 motion could be characterized as either a motion to alter or amend a judgment under Rule 59(e) or a motion for relief from judgment under Rule 60(b).[3] A Rule 59(e) motion tolls the time for appeal by suspending finality of the judgment under Fed.Rule App.P. 4(a)(4). However, a Rule 60(b) motion does not have this tolling effect. *Bank of California v. Arthur Andersen & Co.*, 709 F.2d 1174, 1176 (7th Cir.1983). Another difference is that a Rule 59(e) motion must be filed within 10 days of the entry of judgment whereas Rule 60(b) motions may be filed within a "reasonable time" not to exceed one year.

To avoid the jurisdictional uncertainty that arises from imprecisely characterized post-judgment motions, the Seventh Circuit has adopted the rule that "all substantive motions served within 10 days of the entry of a judgment will be treated as based on

---

**3.** Bankruptcy Rules 9023 and 9024 apply Federal Rules of Civil Procedure 59 and 60 to bankruptcy proceedings and Bankruptcy Rule 8002(b)(3) follows the appeal timetable established by Federal Rule of Appellate Procedure 4(a)(4). Our discussion will be in terms of the more familiar civil and appellate rules.

Rule 59, and therefore as tolling the time for appeal." *Charles v. Daley*, 799 F.2d 343, 347 (7th Cir.1986). The Bank's motion to reconsider was substantive; although it alleged that the bankruptcy court "misunderstood and misapprehended" the Bank's position, it asked that the court make new factual findings and legal rulings and that the debtors' motion to compel turnover granted on April 11 be denied. Motion to Reconsider at 11–12. We believe that the filing of the motion to reconsider on April 21, 10 days after the April 11 Memorandum, tolled the time for appeal. When the bankruptcy court finally denied the motion to reconsider on July 16, the bank had another 10–day period in which to appeal to this court, and it filed the notice of appeal on July 28. Because Fed.R.Civ.P. 6(a) excludes weekends and holidays from the computation of time periods shorter than 11 days, the July 28 notice of appeal by the Bank was timely. The Bank has effectively appealed the bankruptcy court's order to compel the turnover of funds.

■ The debtors also contend that the content of the notice of appeal is insufficient to constitute an appeal of the April 11 Memorandum. The notice states, "[The Bank] appeals to [this court] ... from the Order of July 16, 1986 denying [the Bank's] Motion to Reconsider [the bankruptcy court's] Order of April 11, 1986."

This notice was sufficient to inform the debtors that the bank objected to both the April 11 Memorandum and the July 16 denial of the motion. "The rule is now well settled that a mistake in designating the judgment ... should not result in loss of the appeal as long as the intent to appeal from a specific judgment can be fairly inferred from the notice and the appellee is not misled by the mistake." 9 J. Moore, B. Ward, J. Lucas, *Moore's Federal Practice* ¶ 203.18 at 3–77 (1986). This notice could not have misled the debtors; both rulings of the bankruptcy court were mentioned and the procedural posture of the case, of which the debtors were well aware, gives rise to the fair inference that the Bank was appealing from both rulings.

■ The debtors' final argument is that the evidence of the August 1978 deed introduced at the July 16 hearing cannot be considered as evidence with regard to the April 11 Memorandum. We disagree. The August 1978 deed and the state court file were received into evidence at that hearing without objection by the debtors. July 16, 1986 Transcript at 5, 10. Although the court ruled against the Bank, we may consider the evidence admitted at that hearing in our review of the court's ruling. Transcripts of hearings before the bankruptcy court can be deemed to supplement the bankruptcy judge's order. *In re Evans Products Co.*, 65 B.R. 870, 873 (S.D.Fla. 1986). The debtors' argument that we may not consider this evidence on appeal is in effect an objection to its admission that was not preserved at the hearing and now comes too late.

### Failure to Object to Debtors' Exemption Claims Under Rule 4003(b)

Bankruptcy Rule 4003(b) requires that objections to exemption claims must be filed within 30 days of the conclusion of the meeting of the creditors held pursuant to 11 U.S.C. § 341(a). In the absence of such an objection, the debtors' exemption claims are automatically permitted under 11 U.S.C. § 522(*l*), which states that "unless a party in interest objects, the property claimed as exempt on such list is exempt." The bankruptcy court noted in its April 11 ruling that section 522(*l*) protects the debtor's rights by requiring prompt determination of allowable exemptions and that "Rule 4003(b) provides no recourse for a party who fails to object to a debtor's list of exempt property within 30 days after the conclusion of the 341 meeting ... unless an extension of time is sought within that period. The time limitations of Rule 4003(b) and the procedure for extending them are set in stone." Memorandum at 9.

■ The Bank argues first that its motion to modify the stay in November 1984 before Judge Hertz provided actual notice of its objection to the homestead exemp-

tion.[4] The Bank as support cites the cases of *In re Grosslight*, 757 F.2d 773 (6th Cir. 1985), and *In re Starns*, 52 B.R. 405 (S.D. Tex.1985), in which the creditors' failures to object under Rule 4003(b) were not fatal because the creditors had raised the challenge to the debtors' exemption claims in motions for relief from stay (*Starns*) and separate adversary proceedings (*Grosslight*), thereby giving the debtors notice that their exemption claims were being contested.

We have no such assurance in this case that debtors were put on notice of a dispute. The Bank's motion to modify the stay asks only that the Bank be allowed to foreclose its security interest in the beneficial interest in the land trust. No mention of the homestead exemption is made either in the motion or in Judge Hertz's February 1985 order granting modification of the stay. It is only in the subsequent state court foreclosure proceedings before Judge Cohen that the Bank raised the homestead issue, in response to Judge Cohen's initial ruling that the beneficial interest was to be sold subject to homestead rights. However, the Bank's April 25 motion asserting a waiver of homestead and the state court's order of that date stating that the homestead rights had in fact been waived were tainted by inadequate notice to the debtors. It is conceded that notice of the April 25 motion was served on the debtors but not on their attorney. July 16, 1986 Transcript at 17–18. The debtors' counsel had filed an appearance in the original state court proceedings in case number 82 L 5142, but did not file a separate appearance in the post-judgment citation proceedings. The Bank maintains that he was therefore not entitled to notice of the motion.

The Bank has cited no authority for the proposition that the original appearance does not carry over to the post-judgment proceedings for the purpose of notice; it states only that no separate appearance fee is required under Cook County Circuit Rule 1.3(d). We agree with Judge Ginsberg that the Bank should have given the debtors' attorney notice of the April 25 motion. The debtors themselves may not have understood the motion's importance. The Bank cannot escape the requirements of Rule 4003(b) by initiating state court proceedings that did not adequately put the debtors on notice that their exemptions were being contested.

■ The failure to notify debtors' attorney also denies collateral estoppel effect to the state court's finding that the homestead rights were waived in favor of the Bank. Application of collateral estoppel requires, among other things, that the issue involved be actually litigated in the state court action and be determined by a valid and final judgment of that state court. *United States Life Title Insurance Co. v. Dohm*, 19 B.R. 134, 137 (N.D.Ill. 1982). The waiver issue was not actually litigated in the state action; because of a failure to notify their attorney, the debtors were not given a fair opportunity to respond to the Bank's contention that homestead had been waived. To estop the debtors from arguing the waiver question now would effectively deny them their "day in court" on this issue, which this court must preserve in deciding whether to allow the "offensive" use of collateral estoppel. *Cf. Parklane Hosiery v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979).

## Bank's Status as a Secured Creditor Under § 522(c)

■ The Bank's most forceful argument, and one to which debtors have made no response in their brief, is that the Bank had no need to object to the debtors' homestead exemption claim because the Bank's collateral security in the beneficial interest in the land trust is not subject to exemption by the debtors under any circumstances. The

---

4. The bankruptcy court ruled that the Bank had not shown that the debtors lacked a good-faith statutory basis for their claim of homestead exemption. Memorandum at 10. A recognized exception to the objection requirement is that debtors may not have property automatically exempted if there is no good-faith statutory basis for claiming the exemption. *In re Dembs*, 757 F.2d 777, 780 (6th Cir.1985). The Bank does not raise this issue on appeal and we do not address it. Bank's Reply Brief at 5.

general rule under 11 U.S.C. § 522(c)(1) is that debtors' exempt property is not available to creditors. However, an exception is made as to property secured by a lien that is not "avoided" under § 522(c)(2)(A).[5] The Bank argues that its collateral security interest in the beneficial interest in the land trust is such a lien and that it prevented debtors' homestead interests from being automatically exempt. Therefore, argues the Bank, its failure to object under Rule 4003(b) was immaterial.

The key, therefore, is whether the Bank did have a security interest in the beneficial interest, or whether, as the bankruptcy court ruled, the August 1978 deed conveyed the residential real estate (and waived the homestead rights) to the Bank only as trustee and not as a secured creditor. It is true that under Illinois law in 1978, the debtors did not have any homestead rights in the beneficial interest in a land trust; such an interest is considered personal property, not real estate, and the law had yet to recognize homestead rights in personal property. *Capitol Bank & Trust of Chicago v. Fascetta*, 771 F.2d 1077 (7th Cir.1985). Although the Illinois Homestead Act was amended in 1982 to permit homestead exemptions in personal property, the *Capitol Bank* court ruled that the amendment could not be applied retroactively to trust agreements entered into prior to 1982. *Id.* at 1080.

However, the bankruptcy court ruled correctly on July 16 in holding that the Bank's failure to object to the debtors' exemption claims under Rule 4003(b) precluded the application of *Capitol Bank*. The bank

chose to litigate the homestead exemption issue in the state court without raising the issue in the bankruptcy court until it opposed the debtors' motion to compel turnover in October 1985, well after the Rule 4003(b) clock had run. The Bank's procedural default means that its only method of contesting the exemption at this time is to establish that it is a secured creditor holding a valid lien on the beneficial interest which survived the discharge in bankruptcy.

The Bank maintains that the August 1978 deed by which the debtors conveyed their residence into the land trust was a "substitution of collateral." Five months earlier, the debtors had assigned the beneficial interest in the land trust to the trustee Bank as security for a loan. Record, Document 24, Assignment of Interest. The Bank argues that "when the debtors conveyed their residence to the land trust it became collateral for their debt to the Bank because the trust had already been pledged to the Bank for that debt. Therefore the waiver in their deed could not be anything other than a waiver to the Bank as a secured creditor."[6] Bank's Brief at 26.

Although this argument is plausible, we cannot determine from the evidence in the record whether the Bank was a secured creditor or not. There is no evidence as to the actual purpose for the August 1978 deed; although the Bank maintains the conveyance was a substitution for the collateral it held for its loan to the debtors, the document itself gives no indication as to its purpose. Although the deed incorporates the land trust agreement by refer-

---

**5.** This section provides that liens on property are not subject to exemption unless they are "avoidable" liens. Avoidable liens are those under sections 544, 545, 547, 548, 549 and 724(a). Section 544 contains the "strong arm clause" that authorizes the trustee in bankruptcy to avoid any lien that a creditor at the commencement of the case could avoid, whether or not such a creditor exists. The other sections allow the trustee to avoid liens that arise as the result of statute, fraudulent transfers, and certain fines, penalties and forfeitures. The debtor may exempt any property secured by a lien that has been avoided by the trustee pursuant to any of these avoiding powers. L. King, 3 *Collier on Bankruptcy* ¶ 522.28 at 522–81, 82. The debtors make no claim that the Bank's collateral securi-

ty in the beneficial interest in the land trust can be so avoided.

**6.** Under Illinois law, assigning a beneficial interest in a land trust to the creditor and lodging that assignment with the land trustee (here, the Bank) are the typical methods for perfecting a security interest in a land trust. *In re Einoder*, 55 B.R. 319, 320 n. 2 (Bankr.N.D.Ill.1985). A financing statement need not be filed with the Secretary of State of Illinois to perfect the security interest in a land trust set up in this manner. Lindberg, *Assignments of Beneficial Interests in Illinois Land Trusts as Security for a Debt*, 70 Ill.B.J. 576, 577 (1982).

ence, it does not refer to the assignment of the beneficial interest in that trust, which assignment did state that it was for "collateral purposes only." Record, Document 24 (Assignment).

The bankruptcy court ruled that the August 1978 deed did not meet the requirements of Ill.Rev.Stat. ch. 110, ¶ 12–904, which states, "In any case where such [homestead] release, waiver or conveyance is taken by way of mortgage or security, the same shall be operative only as to such specific release, waiver or conveyance." The bankruptcy court reasoned that the deed did not constitute the "specific" waiver of homestead rights required by that paragraph. The court ruled that the waiver in the deed was insufficient; what was needed as a "waiver in the beneficial interest in the land trust." July 16, 1986 Transcript at 36. Yet it seems to us that the "specificity" referred to in ¶ 12–904 speaks primarily to the operative effect of the waiver as to specific parties, not to the exactitude with which the document is phrased. Paragraph 12–904 suggests that where a homestead waiver is contained in a mortgage or security, that waiver shall only be operative as to that specific transaction; that is, the rights are waived only to that specific mortgagee or creditor and not to the rest of the world. The waiver does not inure to the benefit of all other creditors of the debtor, such as simple contract creditors. 20 Illinois Law and Practice *Homesteads* § 675.

In this case, it is clear that the waiver was given only to the Bank and that the Bank is the only party able to assert that waiver against the debtors. The question is whether the Bank in fact took that waiver as a creditor or as a land trustee. In the absence of more detail as to the purpose of the August 1978 deed, we must remand this case to the bankruptcy court to take more evidence on this issue. The court must determine whether the purpose of the deed was, as the Bank contends, to substitute the beneficial interest in the debtors' residence as the secured collateral for the debtors' loans or whether it simply constituted an addition to the corpus in the existing land trust and was not intended as security for the loans.[7]

The debtors assert that because the bankruptcy court did not rule on the validity of the waiver clause, "[u]ndecided upon issues exist as to whether the alleged waiver was knowingly and willingly given." Debtors' Brief at 27. It is true that the Bank has the burden of proving that the debtors' homestead interest was extinguished in accordance with the statutory provisions of the Homestead Act. *Blaszynski v. Starczewski*, 373 Ill. 140, 25 N.E.2d 884 (1940). However, the deed on its face is in compliance with the applicable requirements of ¶ 12–904; it is in writing, it is signed by both debtors, and it expressly waives "any and all right or benefit under ... any and all statutes of the State of Illinois providing for the exemption of homestead from sale on execution or otherwise."

A party who signs a document is presumed to have read it and to understand its contents. 12 Illinois Law and Practice Contracts ¶ 151; *Finley v. Felter*, 403 Ill. 372, 86 N.E.2d 188 (1949). The Bank should not be burdened with proving that the debtors read and understood the homestead waiver clause. In *In re Hockinson*, 60 B.R. 250 (Bankr.N.D.Ill.1986), the court stated that the creditor bank had the burden of showing a "knowing and intelligent" waiver of homestead rights. *Id.* at 253. However, the debtors in *Hockinson* had not signed a deed with an express homestead waiver clause, but a contract which

**7.** The debtors argue that the Bank's proceedings in state court violated the automatic stay provisions of 11 U.S.C. § 362(d). The bankruptcy court initially agreed with this contention in its April 11 Memorandum, but retreated from that position on reconsideration, stating that while the state court did not have jurisdiction to determine whether homestead rights existed, it did have jurisdiction to determine whether the

Bank's claim to the homestead took priority because of the deed waiving homestead to the Bank. July 16, 1986 Transcript at 12. The Bank received permission from the bankruptcy court to pursue foreclosure on the property in state court. In any event, since we do not base our decision on the res judicata or collateral estoppel effect of that state court judgment, this issue is of little significance.

declared their mobile home to be "personal property." It is clear why the creditor in that situation had to show a knowing waiver; the contract language did not expressly waive homestead rights, but merely characterized the property in such a way that, by operation of law, it was not subject to homestead rights under the statute then in effect. In this case, the express language of the deed allows a presumption that homestead was knowingly waived. It is for the debtors to rebut that presumption on remand.

## CONCLUSION

The April 11, 1986 Memorandum and Order of the bankruptcy court and its July 16, 1986 denial of the motion to reconsider that order are vacated. The case is remanded to the bankruptcy court for further proceedings consistent with this opinion.