**In re Orlo Alden SYRTVEIT, Debtor.**

**Bankruptcy No. 88–40861.**

United States Bankruptcy Court, D. Montana.

Sept. 25, 1989.

**600**

James A. Patten, Billings, Mont., for debtor.

Martha C. Carlson, Billings, Mont., for First Nat. Bank of Crosby.

Carey Matovich, Billings, Mont., Trustee.

Neal Jensen, Great Falls, Mont., Asst. U.S. Trustee.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In this Chapter 7 case, the Trustee filed objections to the claim of exemptions by Debtor in retirement plans existing between the Debtor and his employer Nemont Telephone Cooperative, Inc. The matter has been submitted on an Agreed Statement of Facts, and the parties have filed memoranda in support of their respective positions.

AGREED FACTS

1. On December 8, 1988, Bankruptcy Proceeding No. 88–40861 was initiated by Orlo Alden Syrtveit, as a Chapter 7 liquidation proceeding.

2. The § 341 creditor's meeting was held January 11, 1989.

3. The Schedules filed with the Debtor's Voluntary Petition included a retirement plan valued at $12,885.33, which the Debtor claimed as exempt.

4. On or about April 10, 1989, Debtor moved for leave to amend (1) Statement of Financial Affairs, (2) Schedule A–2, (3) Schedule A–3, (4) Schedule B–1, and (5) Schedule B–2.

5. On or about April 24, 1989, the Trustee formally objected to the claimed exemption of the Debtor's retirement plan.

6. The Debtor has claimed and is claiming as exempt, the balances in three retirement plans with his employer, the Nemont Telephone Cooperative, Inc. The retirement plans are qualified under § 401(a) of the Internal revenue Code. The three plans are as follows:

(1) NTCA Retirement and Security Program.

This plan requires an employee contribution of 3% of the employee's salary each year; the employee has no access to the funds until retirement, unless he or she terminates the employment, at which time the employee contributions may be withdrawn. A total of 3% of the employee's salary was deposited in this plan in the year preceding the date of bankruptcy. Total contributions in 1988 totalled $936.00, and the equivalent cash value of the fund as of December 31, 1988, totalled $61,073.00, in which Mr. Syrtveit is totally vested. A copy of the Statement of Benefits for this plan, as well as the employer's description of the plan, is attached hereto as Exhibit "A". A copy of a booklet describing the Plan, prepared

by Nemont Telephone Cooperative, Inc., is being attached hereto as Exhibit "B".

(2) NTCA Savings Plan

This plan requires an employee's annual contribution of 1% of his or her salary, with a limit of 10%. The employee may withdraw the employee portion of the contributions at any time if desired. In 1988, Mr. Syrtveit contributed 8% of his earnings or $2,496.00 to this savings plan, and it contained a balance of $36,-098.77 on December 31, 1988, in which the employee is fully vested. Information about this savings plan is found in the first two paragraphs of Exhibit "C", attached to this Stipulation and entitled Employee Non–401(K) Contribution Account pre–1987 and Employee Non–401(K) Contribution Account post–1986. With regard to the pre–1987 portion, $7,551.64 is included in employee contributions. With regard to the post–1986 account, $4,555.57 of employee contributions is included. A copy of a booklet describing the Plan, prepared by Nemont Telephone Cooperative, Inc., is attached hereto as Exhibit "D".

(3) 401(K) Plan

This plan requires an annual contribution of 1% of annual salary. Mr. Syrtveit contributed $312.00 to the 401(K) Plan in 1988, and the balance on December 31, 1988, was $2,253.61, in which Mr. Syrtveit is fully vested. These funds are not available to an employee except in the case of retirement, disability, death, separation from the service, or age of 59 and one-half.

The Trustee contends private retirement benefits are not exempt under Montana law. The Debtor contends that a recently enacted Montana exemption statute, H.B. 248, effective March 24, 1989, Chapter 301, Laws of Montana 1989, amending Sections 25–13–614 and 31–2–106, Mont.Code Ann. (1989), provides for exemption of private retirement plans. Further the Debtor claims the Trustee's objections to the exemption was untimely, not having been filed within 30 days of the date of the first meeting of creditors as required by Bankruptcy Rule 4003(b).

In order to put the issue into proper perspective, a summary of the procedural aspects of this case is necessary in addition to the Agreed Statement of Facts. In the Bankruptcy Schedules filed December 8, 1988, the Debtor lists among his exemptions under Schedule B–4:

"Other—retirement—$12,885.33."

The total exemptions claimed are $74,-211.33. While the Agreed Statement of Facts shows certain amendments to the Schedules, no amendments were made to Schedule B–4. As noted in the Agreed Statement of Facts, the retirement exemption now asserted by the Debtor is not of a value of $12,885.33, but totals $99,425.38, being in three different forms of retirement plans, one of which is payable only on retirement, one of which is payable upon death, disability or retirement and the third of which (Savings Plan) is available to the Debtor upon request. As the Trustee notes in her brief, and the Debtor now concedes, "The Trustee has been recently made aware that the total balance of the retirement plans is significantly greater than the $12,885.33 exemption claimed, although the Debtor has not claimed an exemption in this larger amount." By reason thereof, the Trustee asserts that she is entitled, at a minimum, to the amounts in the plans that are greater than the sum claimed of $12,885.33. The Debtor counters that the claim of exemption is for pension benefits, the amount being unimportant and immaterial. By reason of the holding in this case, I deem the issue regarding disclosure of the amount of the plan is not necessary to decide. It would appear such disclosure of the retirement plan in Schedule B–4 is sufficient under the decision of *In re Snow*, 21 B.R. 598, 601 (Bankr.E.D.Cal.1982), which states if property is listed on the claim of exemption, the debtor is entitled to the full value even if that value exceeds the market value placed on the schedule.

Section 522(*l*) of the Bankruptcy Code provides:

"(*l*) The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section. If

the debtor does not file such a list, a dependent of the debtor may file such a list, or may claim property as exempt from property of the estate on behalf of the debtor. Unless a party in interest objects, the property claimed as exempt on such list is exempt.

(m) Subject to the limitation in subsection (b), this section shall apply separately with respect to each debtor in a joint case."

To aid in implementation of such Code provision, Bankruptcy Rule 4003 was adopted and provides:

"Rule 4003. Exemptions.

(a) Claim of Exemptions. A debtor shall list the property claimed as exempt under § 522 of the Code on the schedule of assets required to be filed by Rule 1007. If the debtor fails to claim exemptions or file the schedule within the time specified in Rule 1007, a dependent of the debtor may file the list within 30 days thereafter.

(b) Objections to Claim of Exemptions. The trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors held pursuant to Rule 2003(a) or the filing of any amendment to the list unless, within such period, further

time is granted by the court. Copies of the objections shall be delivered or mailed to the trustee and to the person filing the list and the attorney for such person.

(c) Burden of Proof. In any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed. After hearing on notice, the court shall determine the issues presented by the objections.

(d) Avoidance by Debtor of Transfers of Exempt Property. A proceeding by the debtor to avoid a lien or other transfer of property exempt under § 522(f) of the Code shall be by motion in accordance with Rule 9014."

In addition, Rule 1007(b)(1), requires the debtor in a Chapter 7 case to file with the Court Schedules as prescribed by Official Form 6, which form includes "Schedule B–4 —Property Claimed as Exempt". The form requires the debtor to schedule (1) the type of property, (2) the location, description and so far as relevant to the claim of exemption, present use of property, (3) specify statute creating the exemption, and (4) specify value claimed exempt. The Debtor's Schedule B–4, in the present case, lists the following:

| "Exemption | Type of Property | Description | Value Claimed Exempt |
|---|---|---|---|
| Yes | Other: Retirement Plan | (Blank) | 12,885.33" |

As is readily apparent from the Schedule, the Debtor has wholly failed to specify the state statute which allows the exemption of the retirement plan. It was not until the Debtor filed his brief on August 31, 1989, that the Trustee, and creditors and the Court learned for the first time that the Debtor seeks to claim the exemption under a state statute enacted post-petition and valued the exemption at over $99,000.00. By reason of such tardy notification, I deem the Agreed Statement of Facts and Debtor's brief as an amendment to Schedule B–4, although it must be pointed out that such amendment procedure is bizarre, and not in accordance with Bankruptcy

Rule 1009. I mention the Debtor's procedural deficiencies only because the Debtor seeks in part to overcome the Trustee's objections based on her alleged procedural deficiency in filing an untimely objection. The objection, however, is not untimely for the reasons now discussed.

■ First, I rely on *In re Woodson*, 839 F.2d 610, 613 (9th Cir.1988), which holds: "The bankruptcy court, affirmed by the district court, ruled that Fireman's Fund's objection was untimely because it was filed on February 12, 1985, far more than 30 days after the October 14 creditors' meeting that, in the court's view, triggered the creditors' right to object to

Woodson's claim of exemption. However, Bankruptcy Rule 4003(b) provides '[t]he trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors held pursuant to Rule 2003(a) or *the filing of any amendment to the list* ...' Bankr.R. 4003(b) (emphasis added). Quite clearly, the rule contemplates that objections will be raised within 30 days of the meeting of creditors only as to exemptions scheduled before that meeting. Where the asset is not scheduled until after the meeting, the creditors' right to object does not arise until the debtor amends the schedule and makes a formal claim of exemption."

Like *Woodson*, who failed to schedule the claimed exemption, the Debtor here failed to properly specify the claim of exemptions as to the state statute he was relying upon and the true value of the exempt property. It was not until August 31, 1989, that such statutory authority was finally asserted. The Trustee's objection filed April 25, 1989, was thus timely. *Woodson* cautions each debtor that the operation of the bankruptcy system depends on honest reporting, *Id.* at 614, and the Bankruptcy Rules and Official Forms require a full disclosure of exemptions. Absent compliance with such Rules and Official Forms before the first meeting of creditors, the 30 day provision under Rule 4003(b) does not begin to run until the full detail of the exemption is disclosed by amendment. It behooves debtors to scrupulously complete in full their sworn Schedules. Otherwise, they cannot be bound to complaint about untimely objections.

■ Second, even if I were to treat the exemption as fully disclosed in the original Schedules, I would follow the holding of *Matter of Hansen*, 101 B.R. 33 (Bankr.N.D. Ind.1988). *Hansen* cites cases where strict application of the time limitation under Rule 4003(b) was involved, citing *In re Latimer*, 82 B.R. 354 (Bankr.E.D.Pa.1988); *In re Lattimore*, 81 B.R. 18, 20 (Bankr.E. D.Mo.1988); *Matter of Gullickson*, 39 B.R. 922, 923 (Bankr.W.D.Wis.1984); *In re Thomas*, 27 B.R. 367 (Bankr.S.D.N.Y.1983);

*In re Novotny*, 17 B.R. 196 (Bankr.S.D. 1982). I have no quarrel whatsoever with such case authorities. However, in this case, I conclude, as hereinafter discussed, that Debtor has not shown a good faith statutory basis for the exemption, so that an untimely objection is valid under such limited circumstances. *Hansen* states:

"There is, however, another line of authority which is opposed to the position debtors espouse. This authority would permit the court to entertain a belated objection to exemptions, under limited circumstances. *See Matter of Dembs*, 757 F.2d 777, 780 (6th Cir.1985); *In re Harrigan*, 74 B.R. 224, 230 n. 4 (D.N.D. Ill.1987); *In re Rollins*, 63 B.R. 780, 783–84 (Bankr.E.D.Tenn.1986); *In re Penland*, 34 B.R. 536, 542 (Bankr.E.D. Tenn.1983); *In re Hackett*, 13 B.R. 755, 757 (Bankr.E.D.Penn.1981). These courts have adopted the proposition that the failure to object to an exemption, within the time required, will not create an exemption which otherwise would have no legal basis. *In re Rollins, supra*, 63 B.R. at 783–84. As a prerequisite, they first require the claim to have a statutory foundation. *In re Bennett*, 36 B.R. 893, 895 (Bankr.W.D.Ken.1984). '[T]here must be a good-faith statutory basis for the exemption.' *Matter of Dembs, supra*, 757 F.2d at 780. Without it, an untimely objection to the claim may be entertained. These courts have observed,

'exemption by declaration' is unacceptable for broader policy reasons. The obvious result of such a rule would be to encourage debtors claim that *all* of his property is exempt, leaving it to the bankruptcy trustee and creditors to successfully challenge the claim. *In re Bennett, supra*, 36 B.R. at 895. (emphasis original).

Consequently, for equitable and other reasons, these courts have elected to adopt a principle which will not allow a debtor to successfully claim an exemption to which it is not legally entitled, merely because no one filed a timely objection." *Id.* at 35.

The 1989 Montana legislature again amended Section 31–2–106, effective March 24, 1989, by striking the exemption set forth in 522(d)(10), supra, and inserting in lieu thereof, the following:

"~~522(d)(10) and~~ An individual may exempt from the property of the estate in any bankruptcy proceeding:

(1) that property exempt from execution of judgment as provided in 19–3–105, 19–4–706, 19–5–704, 19–6–705, 19–7–705, 19–8–805, 19–9–1006, 19–10–504, 19–11–612, 19–13–1004, Title 25, chapter 13, part 6, 33–7–511, 33–15–512 through 33–15–514, 35–10–502, 39–51–3105, 39–71–743, 39–73–110, 53–2–607, 53–9–129, Title 70, chapter 32, and 80–2–245;

(2) the individual's right to receive unemployment compensation and unemployment benefits; and

(3) the individual's right to receive benefits from OR INTEREST IN a private or governmental retirement, pension, stock bonus, profit-sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, EXCLUDING THAT PORTION OF CONTRIBUTIONS MADE BY THE INDIVIDUAL WITHIN 1 YEAR BEFORE THE FILING OF THE PETITION IN BANKRUPTCY, WHICH PORTION EXCEEDS 15% OF THE INDIVIDUAL'S GROSS INCOME FOR THAT 1–YEAR PERIOD, unless:

(a) the plan or contract was established by or under the auspices of an insider that employed the individual at the time the individual's rights under the plan or contract arose;

(b) the benefit is paid on account of age or length of service; and

(c) the plan or contract does not qualify under section 401(a), 403(a), 403(b), 408, or 409 of the Internal Revenue Code of 1954 (26 U.S.C. 401(a), 403(b), 408, or 409)."

This then brings us to the merits of the controversy. Montana has "opted out" of the federal exemptions which are available to debtors under § 522(d), except for § 522(d)(10). Section 31–2–106, Mont.Code Ann. Before March 24, 1989, the exemp-

tions available to debtors in Montana were set forth in Section 31–2–106, Mont.Code Ann. which provided:

"Exempt property—bankruptcy proceeding. No individual may exempt from the property of the estate in any bankruptcy proceeding the property specified in 11 U.S.C. 522(d) except that property specified in 11 U.S.C. 522(d)(10) and that property exempt from execution of judgment as provided in 19–3–105, 19–4–706, 19–5–704, 19–6–705, 19–7–705, 19–8–805, 19–9–1006, 19–10–504, 19–11–612, 19–13–1004, Title 25, chapter 13, part 6, 33–7–511, 33–15–512 through 33–15–514, 33–10–502, 39–51–3105, 39–71–743, 39–73–110, 53–2–607, 53–9–129, Title 70, chapter 32, and 80–2–245."

Section 31–2–106, M.C.A., was overhauled by the 1987 Legislature to include, as exempt, numerous public retirement, pension, and annuity funds. However, no private pensions, such as Keoghs, IRAs, or private retirement plans, are specifically listed in the above statutes. Section 522(d)(10) of the Bankruptcy Code was adopted by reference as an exemption specifically allowed Montana Debtors.

Section 522(d)(10)(E) provides:

"(10) The debtor's right to receive—

(E) a payment under a ... annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for support of the debtor and any dependent of the debtor, unless—

(i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's right under such plan or contract arose;

(ii) such payment is on account of age or length of service; and

(iii) such plan or contract does not qualify under Section 401(a), 403(a), 403(b), 408, or 409 of the Internal Revenue Code of 1954 [26 U.S.C. 401(a)], 403(a), 403(b), 408, or 409)."

Thus, private pension plans with certain limitations are now allowed as exempt af-

ter March 24, 1989. H.B. 248 also contained the following legislative provision:

"Effective date—applicability. This act is effective on passage and approval and applies to bankruptcy petitions in which discharge takes place on or after the effective date of this act."

It is in this clause that the Debtor Syrtveit takes solace to exempt his private retirement plans. Syrtveit argues that his discharge was not entered by March 24, 1989.[1] Thus, postures the Debtor, H.B. 248 must be given retroactive effect. The Debtor concedes, as he must, that House Bill 248 was not the law at the time the case was filed. The reason such statement is important to the present issue is that Bankruptcy Code Section 522(b)(2)(A) allows the Debtor to exempt property under state law "that is applicable on the date of the filing of the petition * * * ". The Debtor contends H.B. 248 should be given retroactive effect thus making it "applicable on the date of the filing of the petition" even though it was not enacted until after the Bankruptcy Petition was filed.

 The question of interpretation of Section 522(b)(2)(A) is one of federal law since we are dealing with a federal statute. *See, e.g., In re Wegner,* 839 F.2d 533, 536 (9th Cir.1988). The statutory scheme selected by Congress under the 1978 Code in dealing with property of the estate is ably explained in *Payne v. Wood,* 775 F.2d 202, 204 (7th Cir.1985):

"Under the Bankruptcy Act all property of the debtor becomes part of the estate available to satisfy the creditors' claims. 11 U.S.C. § 541(a). The debtor then may remove some of the property by claiming exemptions under 11 U.S.C. § 522(b). Anything properly exempted passes through bankruptcy; the rest goes to the creditors. The debtor must file 'a list of property that the debtor claims as exempt', and '[u]nless a party in interest objects, the property claimed as exempt on such list is exempt.' 11 U.S.C. § 522(1). If the debtor does not claim an exemption with respect to particular

property, the rule of inclusion stated in § 541 controls, and the property goes to the creditors. *In re Friedrich,* 100 F. 284 (7th Cir.1900); *Gardner v. Johnson,* 195 F.2d 717 (9th Cir.1952); *In re Guerrero,* 30 B.R. 463 (N.D.Ind.1983); *In re Elliott,* 31 B.R. 33 (Bankr.S.D.Ohio 1983). Once property enters the estate, it does not matter whether the property changes form. 11 U.S.C. § 541(a)(6); H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 368 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. If the debtor sells a piece of the creditors' property, he must turn over the proceeds; here, to the extent the contents of the house belonged to the creditors, they get the proceeds."

Section 522(b) has been uniformly interpreted to mean that the Debtor's claim of exemption will apply the state law in effect on the date the Bankruptcy Petition was filed. A number of cases have been faced with the issue at hand where the state law is changed post-petition during the course of the administration of the estate. *In re Punke,* 68 B.R. 936, 939 (Bankr.N.D.Iowa 1987), states:

"Debtor is correct in stating that, as a general rule, a bankruptcy court faced with a debtor's claim of exemptions will apply the law in effect on the date the bankruptcy petition is filed. *See, e.g., In the Matter of Zahn,* 605 F.2d 323, 327 (7th Cir.1979), *cert. den.* 444 U.S. 1075, 100 S.Ct. 1022, 62 L.Ed.2d 757 (1980). *In re Hockinson,* 60 B.R. 250 (Bkrtcy.N.D. Ill.1986), a case almost identical to the one at bar, followed the general rule expressed in *Zahn.*"

*See, also, In re Krantz,* 97 B.R. 514 (Bankr.N.D.Iowa 1989) (The exemption law in effect on the date of filing governs a debtor's right to claim exemptions); *In re Eden,* 96 B.R. 895 (Bankr.N.D.Iowa 1988); *In re O'Brien,* 67 B.R. 317 (Bankr.N.D. Iowa 1986). At the date of the Bankruptcy Petition, H.B. 248 was not the "applicable" state law which governed exemptions allowed under the Bankruptcy Code. Nor

---

1. Indeed, it will never be entered. By judgment entered on September 21, 1989, Syrtveit, upon complaint of a creditor, was denied a general discharge under § 727 of the Bankruptcy Code.

can the language of that Act be given retroactive effect. To do so would be to allow state law to change or preempt federal law and upset the bankruptcy scheme Congress put in place. Under the Supremacy Clause of the U.S. Constitution, Art. VI, cl. 2, a state cannot enact bankruptcy legislation which conflicts with an area acted upon by Congress. *In re Pelter*, 64 B.R. 492, 498 (Bankr.W.D.Okla. 1986), a case considering an Oklahoma exemption statute restricting lien avoidance under § 522(f) of the Code followed *Hall v. Finance One of Georgia, Inc. (In re Hall)*, 752 F.2d 582 (11th Cir.1985), in holding:

> "The import of the provision [522(b)] is merely that a state may decide to require that its debtors rely upon state defined exemptions, instead of the list of federal exemptions contained in Section 522(d).
>
> \*    \*    \*    \*    \*    \*
>
> Although Congress may have undercut the purpose of the exemption scheme by permitting states to opt-out, we disagree that Congress meant to allow unlimited state action on this matter. We hold, therefore, that the Georgia exemptions do not preclude the operation of section 522(f)."

In allowing state exemptions as of the date the Bankruptcy Petition was filed, Congress did not intend that states could change the plain meaning of § 522(b) by the curious method of providing that a post-petition legislative act would apply to all cases where a discharge in a pending case had not been entered. To allow such state action to control would allow states to effectively amend Section 522(b). It would, moreover, as the case demonstrates, demand clairvoyance by the Trustee. Here the 30 day objection period expired before enactment of H.B. 248. The Trustee properly relied on her objections on the law as it was on December 11, 1988, the date of the petition. So must the Debtor, for it is his duty as explained above, to specify in Schedule B–4 the precise state exemption statute on which he relies to free an asset from the estate. Allowing a retroactive application of that precise state statute by applying the uncertainty of the discharge

order, assuming one is issued, frustrates the proper administration of the estate. For all of the above reasons, the exemption claimed by the Debtor in state statute enacted post-petition is without merit and the objections of the Trustee must be tested by the statute in effect on December 11, 1988.

■ Each of the retirement plans qualify under 26 U.S.C. 401(a) and therefore, the three exceptions enumerated in § 522(d)(10)(E) are not applicable. Each plan is exempt to the extent that it is "reasonably necessary" for the support of the debtor and dependents of the debtor. This Court in *In re Hunsucker*, 6 Mont. B.R. 217, 220, 106 B.R. 220 (Bankr.Mont. 1988), adopted the definition of "reasonably necessary" as set forth in *Warren v. Taff*, 10 B.R. 101, 107 (Bankr.Conn.1981), namely:

> "[T]he reasonably necessary standard requires that the court take into account other income and exempt property of the debtor, present and anticipated ... and that the appropriate amount to be set aside for the debtor ought to be sufficient to sustain basic needs, not related to his former status in society or the lifestyle to which he is accustomed but taking into account the special needs that a retired and elderly debtor may claim." *Hunsucker*, at 220.

*Matter of Kochell*, 26 B.R. 86 (Bankr.W.D. Wis.1982), holds that only present payments being received from pension plans are exempt, for if the debtor is not drawing funds from the plans for his or his dependent's support then the plans are not reasonably necessary for support. In the case *sub judice*, the Debtor's current schedule of income and expenses show income from his employment of $2,520.00 and rental income of $250.00 for total monthly income of $2,770.00. His expenses, including $302.00 per month pension contribution, total $3,201.22. His wife earns an additional $680.00 per month for 9 months, which evidently assists in payment of some of the monthly household expense, but the Trustee has not shown how much the Debtor pays for his support. It is clear that none of the pension payments are needed at this time for Debtor's support, as he is em-

ployed full time at a $30,000.00 per year job. Such showing, in line with *Kochell* and *Hunsucker*, demonstrates that none of the pension plans are "reasonably necessary" for his present support. No evidence has been presented by the Debtor as to anticipated need for the pension income. Accordingly, the Trustee has sustained her burden of proof that the pension plans are not reasonably necessary for the support of the Debtor and his dependent. The objections of the Trustee to the claim of exemption must be sustained.

IT IS ORDERED the objections of the Trustee to Debtor's claim of exemption in pension benefits is sustained and the Debtor's claim of exemption is denied.