**In re William B. HOCKINSON and Annie J. Hockinson, Debtors.**

**Bankruptcy No. 85 B 1131.**

United States Bankruptcy Court, N.D. Illinois, E.D.

April 21, 1986.

William P. Ryan, McDermott & Krupa, Ltd., Matteson, Ill., for debtors.

Brian Ira Tanenbaum, Mathewson & Hamblet, Ltd., Northbrook, Ill., for the Bank.

## MEMORANDUM AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

### I. *The Facts*

This matter is before the Court on the objections of Avenue Bank Northwest to the debtors' claim of a homestead exemption in their mobile home. Both the Bank and the debtors have fully briefed the question. The facts do not appear to be in serious dispute. The debtors filed their Chapter 7 petition on February 12, 1985. Among their assets is a mobile home that they had purchased from Shorewood Mobile Home Sales, Inc. in May, 1978. They financed this purchase through a retail installment contract with Dempster Plaza State Bank (now known as Avenue Bank Northwest). The amount financed was $16,024.72, with an interest charge of $16,343.60, for a total of $32,368.32. In return for the financing, the debtors agreed to pay the Bank monthly installments of $224.78 (principal and accrued interest) commencing on June 25, 1978 and continuing for 144 consecutive months until the loan was paid in full. The debtors also gave the Bank a security interest in their

mobile home to secure the loan. The mobile home has served as the debtors' principal residence at 64 Imperial Court, Shorewood, Illinois since its purchase. Metered electricity, gas, water, sewer, and telephone services are connected to the mobile home.

The debtors have claimed a joint homestead exemption in the mobile home in the amount of $15,000 under Ill.Rev.Stat. ch. 110, § 12–901 (1985). The Bank has filed an objection to the debtors' homestead exemption on two grounds. The first argument is premised on the theory that the mobile home in question is personal property, not real property, and that the exemption law that was in effect in Illinois at the time the debtors entered into the agreement did not allow debtors to assert a homestead exemption in personal property used as a residence. The Bank's alternative ground for objecting to the debtors' homestead exemption claim focuses on the amount of the exemption. The Bank argues that if the debtors are allowed to claim a homestead exemption in their mobile home, they should only be allowed the $10,000 homestead afforded them by the law in effect at the time of the agreement, not the $15,000 homestead they would be entitled to claim under the law in effect when they filed their bankruptcy petition.

## II. The Debtors' Right to Claim an Exemption in the Mobile Home

The Bank's principal objection—that the debtors are entitled to no homestead exemption whatsoever—is founded on two premises. The first is that the debtors' claim of homestead exemption is to be analyzed under the exemption law in effect at the time of the agreement in 1978 rather than that in effect at the time of the petition in 1985. The second premise is that the mobile home in issue here is personal property, not real property.

The homestead exemption statute that was in effect on the date the Bank and the debtors executed the agreement in 1978, Ill.Rev.Stat. ch. 52, § 1 (1977), entitled a debtor who was the head of a household to claim a maximum exemption of $10,000 in land and buildings located thereon used as a residence. The statute was silent regarding whether a debtor could claim a homestead exemption in personal property as opposed to real property used as a residence. However, the Seventh Circuit has interpreted it to deny such an exemption. *See Capitol Bank & Trust of Chicago v. Fascetta,* 771 F.2d 1077, 1080 (7th Cir. 1985). The Illinois homestead exemption statute was amended in 1982.[1] The current Illinois homestead exemption statute, Ill. Rev.Stat. ch. 110, § 12–901 (1985), provides that an individual debtor may claim a maximum exemption of $7,500, and joint debtors may claim a maximum exemption of $15,000 in land and buildings located thereon used as a residence.[2] The current law specifically permits a homestead exemption in personal property.

1. A new Illinois exemption law, with similar provisions to the current § 12–901, was enacted effective January 1, 1982. *See* P.A. 82–685, § 1. However, a legislative gaffe reinstated the former exemption provisions when the new Illinois Code of Civil Procedure was adopted effective July 1, 1982. This error was corrected with the repeal of the former exemption law and replacement with the newer, more generous version of § 12–901 effective July 13, 1982. *See* P.A. 82–280, § 12–901; P.A. 82–783, Art. III, § 43.

2. Under current Illinois law, the debtor need not be a head of household to be able to assert the exemption, as under the previous Illinois law. Under the previous law there could only be one head of a household. *Morris Inv. Co. v. Skeldon,* 399 Ill. 506, 509, 78 N.E.2d 504, 506

(1948), *Johnson v. Muntz,* 364 Ill. 482, 485, 4 N.E.2d 826, 828 (1936). Therefore, even if the property was jointly owned, only one debtor could claim an exemption in the residence. That is no longer true under current law as a result of the dropping of the requirement that the debtor be the head of a household in order to be entitled to assert the homestead exemption. Husbands and wives can now each assert separate exemptions in jointly owned property. *See also* 11 U.S.C. § 522(m). Interestingly enough, for a debtor who is the head of household and is the sole owner of the homestead, the statutory change actually *lowered* the allowed exemption from $10,000 to $7,500. The implications of this in constitutional terms have not been raised by either party.

Obviously, the debtors argue that this Court should use current law in analyzing their homestead exemption claim because under that law their claimed homestead exemption is clearly allowable. Naturally, the Bank takes the opposite view and argues that the debtors' exemption rights should be analyzed under the prior law under which the merits of the claimed homestead are much less clear. The Seventh Circuit has ruled that in cases like this, the question of whether the debtors are entitled to claim an exemption or not must be determined in the first instance by application of the exemption law in effect at the time of the agreement. *Capitol Bank,* 771 F.2d at 1080.[3] Because the Seventh Circuit has made it clear in the *Capitol Bank* case that the prior exemption law should be applied on these facts, there is no need to reach the questions raised by the parties as to whether the present exemption law could be applied constitutionally in this case to determine the existence (as opposed to the amount) of the available exemption.

It is the Bank's position that the debtors cannot claim any homestead exemption in their mobile home under the former exemption statute because debtors could not claim homestead exemptions in personal property under that statute and because the agreement stated that the mobile home was personal property.[4] Therefore, the Bank concludes that the mobile home is not subject to the homestead exemption.

■ Despite the contract language suggesting that the mobile home in question should be treated as personalty, this Court finds that the facts of this case demonstrate that it is in fact realty, and that the debtor in this case who is the head of household could have asserted a $10,000 exemption under the former exemption statute. The appropriate indicator of whether a "mobile home" remains personal property or has become "something more" than personal property is essentially whether the mobile home has become a fixture by virtue of its physical relationship to the land on which it is placed and the intention of the parties. *In re Loomis,* 34 B.R. 427, 428 (Bankr.D.Or.1983); *In re Morphis,* 30 B.R. 589, 591–92 (Bankr.N.D. Ala.1983); *Hartford Nat. Bank and Trust Co. v. Harvey,* 420 A.2d 230, 234 (Me.1980). Although no Illinois court has specifically adopted this test, at least one federal court in Illinois has applied a similar test. The court in *Matter of Matthews,* 43 B.R. 466 (D.Ct.N.D.Ill.1984) held that a debtor's mobile home was exempt under the former homestead exemption statute. The *Matthews* court based its decision on the fact that the debtor intended to permanently affix the mobile home to realty because utilities had been connected to the home, and the debtor and his family resided in the home for 14 years. *Id.* at 467.

*Matthews* is indistinguishable from this case. The debtors' home has been in place for seven years and is functionally attached to the land by utility connections and other means. It is a "building" used as a residence for exemption law purposes. A "building" is a "structure designed for habitation, shelter, storage, trade, manufacture, religion, business, education, and the like." Black's Law Dictionary 176 (5th ed. 1979). In light of the fact that the Illinois exemption statutes are to be interpreted in favor of the debtor, *In re Barker,* 768 F.2d 191, 196 (7th Cir.1985); *In re Johnson,* 53

---

**3.** There is no doubt that the debtors are entitled to the exemption they claim under current law. Therefore the Court does not have to deal with the question of what would happen if the debtors were entitled to an exemption under law in effect at the time of this agreement but not under law in effect at the time of the petition.

**4.** The agreement provided in pertinent part:
IT IS EXPRESSLY UNDERSTOOD AND AGREED that the mobile home herein described shall at all times be and continue to be personal property and not real property, regardless of where located and howsoever placed upon any tract of land; and that all of the terms hereof shall be construed pursuant to and in accordance with the laws of the State of Illinois, relating to the purchase and sale of personal property, the incumbent and repossession thereof and for the purpose of determining the right to liability of the parties hereto.

B.R. 919, 923 (Bankr.N.D.Ill.1985) *reh'g. den.* 57 B.R. 635 (Bankr.N.D.Ill.1986), this Court has little difficulty concluding that this mobile home is a "building" for exemption purposes under the former Illinois homestead law.[5]

The Bank's reliance on the provision in the contract to the effect that the mobile home shall be deemed to be personalty rather than realty is misplaced. That provision is in reality a device designed to waive the debtors' homestead exemption rights in the mobile home under the prior law.[6] It is clear that the clause in question is invalid as a waiver of a real property homestead exemption under both Illinois law in existence at the time the agreement was signed and at the time the petition was filed. *See* Ill.Rev.Stat. ch. 52, § 4 (1977); Ill.Rev.Stat. ch. 110, § 12–904 (1985). Section 12–904 of the Illinois Code of Civil Procedure provides that a waiver of homestead is only valid if it is in writing and signed by the individual waiving that exemption and his or her spouse.[7] The Bank has failed to present any document signed by the debtors waiving their homestead rights in the mobile home. The classification of the mobile home as personal property in the agreement cannot circumvent the waiver requirements of Illinois law. Waivers of homestead rights should be viewed narrowly. The burden is on the Bank to establish that the debtors knowingly and intelligently waived their homestead rights. *Cf. Blaszynski v. Starczewski,* 373 Ill. 140, 142, 25 N.E.2d 884, 885–86 (1940). There is no evidence that the debtors in this case understood the potential consequences of designating their mobile home as personal property at the time they signed the agreement. A specific waiver of homestead was required. In the absence of such a waiver, the debtors would be permitted to assert a $10,000 homestead exemption under the former exemption statute.

### III. *The Amount of the Debtors' Homestead Exemption*

The Bank's fallback in the event that the Court, as it has done earlier in this opinion, holds that the debtors may claim a homestead exemption in the mobile home, is that the debtors are limited to the homestead exemption of $10,000 under the former exemption statute and may not claim a joint exemption of $15,000 under the current law. The Bank asserts that applying the dollar limits of the homestead exemption statute as of the date the petition was filed and not as of the date the agreement was signed violates the Bank's constitutional right to be free from state legislation impairing its freedom of contract under Article I, Section 10 of the United States Constitution. Specifically, the Bank argues that because the debtors' mobile home is worth $12,000, the Bank would be denied of any recovery if the debtors could claim a $15,000 exemption rather than a $10,000 exemption.[8]

Case law supports the debtors' position that courts should determine the extent of exemption rights by reference to exemption statutes in effect on the date the

---

5. This building, the mobile home, was on a lot of land owned or leased by the debtor and thus literally fits within the language of former Ill. Rev.Stat. ch. 52, § 1 (1977).

6. The same analysis applies to the provision in the contract prohibiting the debtors from affixing the mobile home to land. It is clear that these mobile homes are only mobile in the technical sense. Residents rarely tow these things behind their cars. Instead, as in this case, debtors commonly park the home in one spot for lengthy periods of time. In fact, the balance of that provision in the contract provides for special insurance requirements in the event the mobile home is to be moved, thus confirming that the Bank was aware of the realities of the situation. This clause and the clause calling the home personalty *supra* n. 4 are nothing more than attempts by the Bank to have the debtors waive homestead rights in their not-so-mobile home.

7. Section 12–904 provides in pertinent part that "[n]o release, waiver or conveyance of the estate so exempted shall be valid, unless the same is in writing, signed by the individual and his or her spouse...."

8. The debtors' schedules value their mobile home at $12,000. The Court will accept this valuation for purposes of ruling on this objection only.

bankruptcy petition is filed. *See Henson v. Moore*, 104 Ill. 403, 407 (1882); *Cochran v. Cutler*, 39 Ill.App.3d 602, 609, 350 N.E.2d 59, 63 (2d Dist.1976). In *Matter of Zahn*, 605 F.2d 323 (1979), the Seventh Circuit found that the relevant state exemption statute under the Bankruptcy Act was the statute in effect on the date the petition was filed regardless of when the debts arose. In *Zahn*, the debtor and his wife filed bankruptcy in 1975. All of their debts, with one exception, were incurred prior to March 12, 1974, the effective date of an amendment to a Wisconsin statute that increased the homestead exemption from $10,000 to $25,000. The issue in *Zahn* was whether the debtors could assert the $25,000 exemption against creditors who extended credit prior to the 1974 amendment. The Seventh Circuit adopted the bankruptcy court's findings that the $25,000 exemption was rightfully asserted because it was the allowable exemption amount under the statute in effect on the date of the bankruptcy petition. *Id.* at 324. The court accepted the reasoning that a debtor's property and extent of available exemption rights must be determined at one common point in time, the date the petition is filed (and the date the exemption is claimed). *Id.* at 327.

The Bank suggests that because *Zahn* was a Bankruptcy Act case, it has no application under the current Bankruptcy Code. This contention is incorrect. It is true, as the Bank argues, that the Code overruled *Lockwood v. Exchange Bank*, 190 U.S. 294, 23 S.Ct. 751, 47 L.Ed. 1061 (1903), and included exempt property as property of the estate. This means that property that is not property of the estate on the petition date cannot be exempted by the debtor. It also means that the bankruptcy court has full jurisdiction over exempt property even after it is determined to be exempt under applicable state or federal law. However, neither the practical effect of the overruling of *Lockwood* nor the current broad jurisdiction of the bankruptcy courts (also mentioned by the Bank) has anything to do with the issue now before this Court or the *Zahn* court. *Zahn*'s holding that exemp-

tion rights are to be determined as of the petition date is equally applicable under the Bankruptcy Code. *See e.g., Hollytex Carpet Mills v. Tedford*, 691 F.2d 392, 393 (8th Cir.1982); *In re Avery*, 41 B.R. 224, 226 (Bankr.D.Vt.1984); *In re Penland*, 34 B.R. 536, 540 (Bankr.E.D.Tenn.1983).

The Bank further asserts that determining exemption rights on the petition date substantially impairs the value of the agreement in violation of Article I, Section 10 of the United States Constitution. In determining whether a state statute impairs a contract a court must determine (1) whether the statute substantially impairs the contractual relationship and (2) whether the statute is reasonable and necessary for the accomplishment of an important public purpose. *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727. "Minimal alteration of contractual obligations may end the inquiry at its first stage. Severe impairment will push the inquiry to a careful examination of the nature and purpose of state legislation." *Id.* at 245, 98 S.Ct. at 2723.

The increase in the Illinois homestead exemption statute neither substantially impairs the parties' contractual relationship nor is unreasonable or unnecessary for the accomplishment of an important public purpose. Numerous courts have found the application of an increased exemption to be but a minimal alteration of the parties' contractual relationship. *See In re Zahn*, 605 F.2d 323 (7th Cir.1979) (application of homestead exemption increase from $10,000 to $25,000 approved); *In re Eldridge*, 22 B.R. 218 (Bankr.D.Me. 1982) (application of automobile exemption increase from $1,000 to $1,200 approved); *In re Ageton*, 6 B.R. 727 (Bankr.D.Ariz. 1980) (application of homestead exemption increase from $15,000 to $20,000 approved); *Wilkinson v. Carpenter*, 277 Or. 557, 561 P.2d 607 (1977) (application of homestead exemption increase from $7,500 to $12,000 approved); *Cochran v. Cutler*, 39 Ill. App.3d 602, 350 N.E.2d 59 (1976) (application of homestead exemption increase from $5,000 to $10,000 approved); *but see Mat-*

*ter of Echavarren,* 2 B.R. 215 (Bankr.D. Idaho 1980) (application of homestead exemption increase from $10,000 to $25,000 not approved).

The Seventh Circuit's recent opinion in *Capitol Bank & Trust of Chicago v. Fascetta,* 771 F.2d 1077 (7th Cir.1985) is not inconsistent with this conclusion. In fact, *Capitol Bank* supports this Court's conclusion that it must apply the dollar limits of the exemption law in effect on the petition date. The Seventh Circuit held that it could not apply the terms of a statute that created an entirely new exemption right that was enacted after the parties entered into a security agreement but before the debtor filed a bankruptcy petition. The Court held if a statutory exemption did not exist at all at the time of contracting, a debtor could not benefit from its later enactment. *Id.* at 1080. However, the court suggested in dicta that its result would be different if only the statutory amount in an exemption statute changed from the date of the security agreement to the date of the petition. *Id.* That is the precise situation now presented to this Court. This is not a case of a debtor asserting an exemption right under current law that could not have been asserted under law in existence at the time of the agreement. This Court has already ruled that these debtors could have claimed an exemption in their mobile home under prior law. Thus, the issue is whether they can claim an exemption in excess of what they could have claimed under prior law. *Zahn* and *Capitol Bank* clearly require this Court to allow the increased homestead exemption for the debtors in this case as there is no *substantial* impairment of the parties' contractual relationship.

Because there is no substantial impairment of the parties' contract, the Court is not required to inquire into the reasonableness and necessity of the $5,000 statutory increase in the homestead exemption statute. Nevertheless, it should be noted that the statutory change was both reasonable and necessary for the accomplishment of an important public purpose. The general purpose underlying exemption statutes is to offer the debtor the means to support himself and his family. *In re Breau,* 17 B.R. 697, 699 (Bankr.D.Me.1982); *Zachmann v. Zachmann,* 201 Ill. 380, 390, 66 N.E. 256 (1903); *Dixon v. Moller,* 42 Ill. App.3d 688, 691, 1 Ill.Dec. 411, 415, 356 N.E.2d 599, 603 (5th Dist.1976). In light of the inflation rate in the 1970's and the accompanying surge in residential home values, a $5,000 increase in the allowed maximum exemption in a homestead is clearly reasonable and necessary to accomplish that important goal. *See In re Eldridge,* 22 B.R. at 222. Providing debtors with means to support themselves enables them to be productive members of society, enhances human dignity, and avoids increased public assistance expenses. The goal of the Illinois homestead exemption statute is to protect and shelter debtors and their families and warrants a liberal construction. *In re Barker,* 768 F.2d 191, 196 (7th Cir.1985); *Matter of Matthews,* 43 B.R. 466, 467 (Bankr.N.D.Ill.1984).

## IV. *Conclusion*

Based on the foregoing, the Court finds that the debtors are entitled to assert a homestead exemption in their mobile home in the amount of $15,000. The only issue remaining is whether they may claim that exemption against the Bank's interest in their homestead. Although it has not been cited or discussed by either party, it appears to the Court, at least on a prima facie analysis, that Ill.Rev.Stat. ch. 110, § 12–903 (1985) is applicable to this case. Section 12–903 provides that a debtor may not claim a homestead exemption to defeat a purchase money security interest.[9] In this case it is undisputed that the Bank loaned money to the debtors specifically for the purchase of their mobile home. Thus, the debtors may not be able to assert a homestead against the Bank. However, such a

---

**9.** Section 12–903 states that "[n]o property shall, by virtue of Part 9 of Article 9 of Article XII of this Act ("Exemption of Homestead"), be exempt from sale ... for a debt or liability incurred for the purchase or improvement thereof."

result requires that the Bank have a valid purchase money security interest. In a single sentence in their memorandum opposing the Bank's objections to their claim of homestead, the debtors say "Bank has never properly perfected that security interest." There is no further explanation of why the Bank's security interest might be invalid. In any case, the debtors have filed no complaint or other pleading which would bring the validity of the Bank's security interest into issue. In light of that fact, all the Court is doing at this time in overruling the Bank's objection to the debtors' $15,000 homestead exemption in their mobile home is determining that the debtors are entitled to claim the exemption. The Court makes no finding that the exemption can be asserted against the Bank's security interest. *Cf.* 11 U.S.C. § 522(c).