**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**ONE 1989 STRATFORD FAIRMONT,**
**Defendant.**

**Mark Stover, Claimant–Appellant.**

**No. 92–1693.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 27, 1993.

Decided Feb. 12, 1993.

Rehearing Denied March 8, 1993.

---

Elizabeth M. Landes, Asst. U.S. Atty., Fred Foreman, U.S. Atty., Ernest Y. Ling (argued), Crim. Div., Chicago, IL, for plaintiff-appellee.

Marc W. Martin, Andrew M. Plunkett (argued), Genson, Steinback, Gillespie & Martin, Chicago, IL, for appellant.

Before COFFEY and EASTERBROOK, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

EASTERBROOK, Circuit Judge.

"Mobile home" is a misleading term. A motor home can cruise through Yellowstone National Park, stopping in a different campground every night. A house trailer needs only a car equipped with a trailer hitch to take to the interstate highway system. But most mobile homes travel only once or twice. These living quarters, manufactured in a factory to achieve economies of scale, are hitched to a tractor for delivery. They are mounted on platforms (sometimes crude ones of cinder blocks), tied down, and connected to utilities. Usually the owner of the mobile home leases this "pad" in a trailer park and sells the mobile home in place rather than taking it with him when he tires of the location.

Mark Stover, then 18, bought a 14' × 70' mobile home on its pad in Park City, Illinois, for $29,000 in cash. The money came from a settlement of tort litigation, but Stover was not content to live off his judgment. Six months after he bought the mobile home the police burst in, arresting him for drug offenses. Police found marijuana (both cut and growing), packaging materials, and records of drug transactions. After Stover pleaded guilty in state court to the felony of possessing marijuana with intent to deliver it, the United States seized the mobile home for forfeiture. The district court concluded that the mobile home is forfeit under 21 U.S.C. § 881(a)(7), which covers:

> All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment....

Although mobile homes are not "real property" for most purposes—for example, they are not recorded in the real estate records and do not pass with the land as fixtures—the district court concluded that

they are "real property" (or at least "appurtenances") under § 881(a)(7) because they serve the same role as houses in both drug transactions and the lives of the persons who commit drug offenses. 783 F.Supp. 1154, 1160 (N.D.Ill.1992). Cf. *Soldal v. Cook County*, — U.S. —, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992). Stover insists that state law controls the characterization of property and that the mobile home, called "personal property" in his lease with the owner of the pad, is securely on the "personal" side of the line in Illinois.

■ We may assume, following *United States v. Certain Real Property*, 910 F.2d 343, 347–49 (6th Cir.1990), that state law defines and classifies "property" interests for purposes of the forfeiture statutes. Cf. *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979) (same in bankruptcy law); *United States v. Rodgers*, 461 U.S. 677, 683, 103 S.Ct. 2132, 2137, 76 L.Ed.2d 236 (1983) (same in tax law). It would be possible to spend a good deal of time piecing out the law of property in Illinois. For example: the district judge, well aware that Illinois treats mobile homes as personalty for purposes of titling and transfer, observed that the state treats mobile homes on foundations as realty for tax purposes. Ill.Rev. Stat. ch. 120 ¶ 482(13); see 783 F.Supp. at 1159 & n. 13. What of the possibility that the mobile home is an "appurtenance" to the real estate? That term, used in the law of both personal and real property, is a shade different from "fixture," although, like a "fixture," an "appurtenance" (such as a ship's bell) normally is conveyed with the property. When conflicting characterizations are close but imperfect fits, a court should select not the "right" characterization (for there is no one right answer) but the one that best advances the functions of the federal law. Cf. *Wilson v. Garcia*, 471 U.S. 261, 271–75, 105 S.Ct. 1938, 1944–46, 85 L.Ed.2d 254 (1985); *Owens v. Okure*, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). The federal forfeiture law is designed to impose steep penalties on those who deal in drugs. A dealer who uses his home as a place of illegal business will lose the residential aspect of the premises along with the business aspect. Forfeiture of the full value of the joint residential and business premises is no less appropriate when the premises sit on cinder blocks than when they rest on a concrete foundation.

■ Indeed, forfeiture may be more appropriate. For Stover seeks to escape treating his mobile home as a "home" by emphasizing the "mobile" part. Movement is rare, to be sure, but Stover's Stratford Fairmont had axles. Put the tires back on, attach the license plate, hitch up a tractor, and off it goes, just like a tractor-trailer combination. The more mobile the home looks, the more it resembles a vehicle, forfeitable under § 881(a)(4), which covers:

> All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of [drugs].

Stover conceded at oral argument that an old bus, on cinder blocks and being used as a residence, is a "vehicle" even though it is no more apt to move than is a mobile home. He tried to brush aside the significance of this, contending that a bus, designed to move frequently, remains a vehicle in old age after it loses the capacity of movement. Aristotle notwithstanding, things do not have inherent properties, let alone names and categories carried from birth to death. See *In re Erickson*, 815 F.2d 1090 (7th Cir.1987). Cut the legs off a table and it is just a flat piece of wood. Take the tires off a bus and it is still a vehicle. Why? A bus, on cinder blocks and missing its engine, is a "vehicle" not because it *formerly* carried passengers over the roads but because it has the attributes that still make "vehicle" a useful cue to organization. Cf. Henry M. Hart, Jr. & Albert M. Sachs, *The Legal Process* 1214–15 (tent. ed. 1958). Axles and the capacity for both containment and movement unite items as diverse as semitrailers, Indy cars, tanks, chariots, buggies, snowmobiles, riding lawn mowers, and entries in a Soapbox Derby. A bus with its undercarriage removed is no longer a (statutory) vehicle, any more than a piece of chocolate in the shape of a pistol

is a firearm. But the King Leopold Ferrari in an auto fancier's collection is a "vehicle" even though no one plans to crank the engine in the foreseeable future. See *Lee v. Voyles*, 898 F.2d 76 (7th Cir.1990).

Stratford Fairmont mobile homes come with axles so that they can be moved on demand. Stover did not mount his mobile home on a permanent foundation; it is *no* more fixed in place than is our hypothetical bus. He could have remounted the wheels and moved it to another city more readily than a musician can move a grand piano to another stage. So if capacity for movement dislodges a mobile home from the "real property" category, it deposits the mobile home among the "vehicles." Cf. *California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). Forfeiture does not depend on actual movement. Recall that § 881(a)(4) covers vehicles used to "facilitate the ... sale, receipt, possession, or concealment" of drugs and not just their "transportation". Potential movement is enough. A *mobile* home is a vehicle; a mobile *home* is real property; either way, Stover's drug distribution center now belongs to the United States.

AFFIRMED.